IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANTONIO MELENDEZ CRUZ,

Plaintiff,

v.

ANDREW SAUL,[1] Commissioner of
Social Security,

Defendant.

CIVIL NO. 18-1903 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On November 26, 2018, Plaintiff Antonio Meléndez Cruz ("Plaintiff") filed a Complaint challenging the denial of his Social Security disability benefits by Defendant Andrew Saul, Commissioner of Social Security ("Commissioner" or "Defendant"). (Docket No. 1).[2] On that same day, Plaintiff consented to proceed before a Magistrate Judge and the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket Nos. 5, 8 and 9).[3]

On June 6, 2019, the Commissioner answered the Complaint and shortly thereafter, filed a copy of the administrative record. (Docket Nos. 13 and 15). On July 15, 2019, Plaintiff filed his memorandum of law (Docket No. 16). Then, the Commissioner

---

[1] At the time this suit was filed, Nancy A. Berryhill was Acting Commissioner of Social Security. On June 17, 2019, Andrew Saul was sworn in as Commissioner of said agency. Commissioner Saul is therefore automatically substituted as a Defendant in this case. See Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[3] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. 28 U.S.C. section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civ. P. 73(a).

filed his memorandum of law. (Docket No. 19).

After careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former heavy equipment operator, filed an application for disability benefits with an alleged onset date of disability of December 9, 2011. The application was initially denied, as was the reconsideration. (Tr. pp. 203-219 and 221-237). Plaintiff then requested an administrative hearing which was held on August 4, 2016. Plaintiff was present with counsel and able to testify regarding his claims. (Tr. pp. 41-54). Testimony was also heard from a Vocational Expert ("VE") regarding the kinds of jobs that Plaintiff could perform despite his ailments. Id.

On September 7, 2016, the presiding Administrative Law Judge ("ALJ") issued an opinion finding Plaintiff was not disabled from the onset date through his last insured date. (Tr. pp. 22-35). As part of his fact-finding responsibilities, the ALJ made the following findings of fact in this case:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.

2. Plaintiff did not engage in any substantial gainful activity during the period from his alleged onset date of December 9, 2011 through his last insured date of December 31, 2014.

3. Through the date last insured, Plaintiff had the following severe impairments: a depressive disorder, post-traumatic stress disorder ("PTSD") and bilateral knee osteophytes.

4. Through the last date insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light wok as defied in 20 CFR 404.1567(b) except for the following: He needed to alternate positions between sitting and standing at intervals of two (2) hours during the day in an eight (8) hour daily work routine. He could occasionally climb ramps, stairs, ladders, ropes, and scaffolds and could occasionally balance, stoop, kneel, crouch, and crawl. He could frequently use his judgment to understand remember and carry out simple repetitive instructions and tasks. He could frequently respond appropriately to supervision, coworkers, work situations and changes in a work setting, and could only occasionally deal with the public.

6. Through the last date insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on January 8, 1971. He was 43 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. Plaintiff is not able to communicate in English and is considered in the same way as an individual who is illiterate in English.

9. Transferability of skills is not material to the determination of disability because using the Medical-Vocations Rules as a framework supports a finding on "not disabled", whether or not Plaintiff has transferable job skills.

10. Through the last date insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 9, 2011, the alleged onset date, through December 30, 2014, the date last insured.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner which is subject to review by this Court. (Tr. pp. 1-8).

Plaintiff objects the ALJ's final decision denying him disability benefits alleging that the ALJ erroneously evaluated his metal limitations and, therefore, misconstrued his RFC. The Commissioner disagrees.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 2294 (1987). It is well settled law that a claimant is

disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, a five-step sequential evaluation process must be applied in making a final determination. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. § 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination

of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §404.1520(d); 20 C.F.R. pt. 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. § 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the RFC, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. § 404.1520(f).

In the case at bar, the ALJ determined at step 2 that Plaintiff had several impairments[4], and at step 3, that the impairments we not equivalent to any listed impairment and were therefore not severe enough by themselves to preclude gainful activity. Moving on to the remaining steps in the equation, the ALJ then found at step 4 that Plaintiff could not perform his previous work as a heavy equipment operator, and then at step 5, found that considering Plaintiff's age, education, work experience, and

---

[4] The ALJ found that Plaintiff suffered from a depressive disorder, post-traumatic stress disorder and bilateral knee osteophytes. (Tr. p. 24).

RFC, there were light jobs that existed in significant numbers in the national economy that he could perform, such as a marker, lens matcher and gluer, and was therefore not disabled.

## LEGAL ANALYSIS

The Court is authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment either affirming, modifying, or reversing the final decision of the Commissioner. That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The Court must defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). If the Commissioner derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," then her findings are not conclusive and must be reversed. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

It is important to note that "the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not

for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018), Nguyen, 172 F.3d at 31. Thus, this Court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Plaintiff's only claim of error is that the ALJ erred in the evaluation of the mental evidence. The Court only focuses on the mental issues because no claims were raised as to Plaintiff's physical ailments. Plaintiff posits that the ALJ failed to properly construct his RFC which resulted in an incorrect conclusion that he was not disabled, for two reasons. First, Plaintiff argues that the ALJ incorrectly found that he engaged in household chores. Second, he alleges the ALJ gave improper weight to the medical consultants. As a result, Plaintiff asserts that the ALJ improperly substituted "his own" RFC for that of the medical consultants and arrived at an incorrect conclusion that he was not disabled.

As to the first issue, Plaintiff argues that the ALJ's conclusion that he could perform household chores is in direct contravention to what some of the medical consultants presented in their reports where they stated the opposite. The discrepancy arises because the ALJ concluded in his opinion that Plaintiff "spent the day doing house chores" while one of the examining physicians reported that he did "some" house chores. Plaintiff argues this is incorrect, insofar as he reported that the did not do house chores at all.

In the end, this a distinction without a difference because the ALJ is obliged to evaluate all the relevant evidence in the record. While Plaintiff states he could perform

no house chores and at least one physician stated that he did some house chores, there is other evidence in the record that Plaintiff was able to perform at least some personal home activities, such as making coffee, watching television, driving locally, attending church, reading and playing with his cats. These facts ultimately fall in line with the ALJ's conclusion that Plaintiff could do light work. In addition, Plaintiff forgets that this evaluation of the relevant evidence falls squarely within the ALJ's duty, as the ultimate fact finder, to resolve any evidentiary conflicts. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981).

Plaintiff next challenges the weight afforded to the consulting psychiatrists. Dr. Hector Rodríguez ("Dr. Rodríguez") evaluated Plaintiff in March 2013. Plaintiff challenges the fact that the ALJ gave great weight to Dr. Rodríguez' conclusion that Plaintiff could handle funds, given the fact that this conflicted with his GAF score of 45-50, [5] and with the doctor's observations of diminished concentration, diminished attention span, constricted affect and sad and anxious mood. (Tr. pp. 448-449). However, Dr. Rodríguez also found Plaintiff cooperative, oriented in three spheres, with adequate immediate recall, with no deficits in recent or remote memory, with an appropriate fund of general knowledge, with an unimpaired ability to calculate and with no suicidal or homicidal ideations. Id. As such, Dr. Rodríguez concluded that, although

---

[5] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range and serves to take a snapshot of claimant's state of mind at the time the evaluation is performed. The GAF is no longer used in the DSM-5. A score of 50-41 indicates serious symptoms (obsessional rituals, shoplifting) or serious impairment in social occupation or school functioning (i.e. no friends).

Plaintiff's prognosis was guarded, he could manage funds. (Tr. p. 449).

Certainly, there is room in this record to reach a different result. However, at this juncture, all that is required is that the ALJ's conclusions be founded on substantial evidence. It has been well established that, although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct 1420, 1427 (1971). Where the facts permit diverse inferences, the Court will affirm the Secretary even if the Court might have reached a different result, as long as that result is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte, 654 F.2d at 128. The Court finds that there is substantial evidence in Dr. Rodríguez' report to support a finding that Plaintiff was not completely disabled.

The same occurs with the opinion rendered by consultant Dr. Angelica Rodríguez-Nieves ("Dr. Rodríguez-Nieves"), who examined Plaintiff a year after Dr. Rodríguez, in March 2014. Plaintiff objects that the ALJ gave little weight to Dr. Rodríguez-Nieves conclusion that Plaintiff was unable to handle funds, and that the ALJ failed to consider that she found Plaintiff with the following conditions: disoriented in time and place, little concentration, restricted attention, restricted immediate memory, restricted short-term memory and restricted social judgment. (Tr. pp. 103-104). Nonetheless, Dr. Rodríguez-

Nieves also found that Plaintiff was cooperative and with appropriate affect, with coherent, relevant and logical speech, with appropriate psychomotor activity, adequate recent memory and without evidence of disorganization of thoughts processes, ideas of reference or delusions. Id. Dr. Rodríguez-Nieves concluded that Plaintiff was able to interact adequately in simple situations but not complex social ones. (Tr. p. 105).

There is also sufficient basis for the Court to find that substantial evidence exists for the ALJ to have adopted Dr. Rodríguez-Nieves' conclusion that Plaintiff, although affected, was not completely disabled and retained the capacity to interact in simple situations. As such, the Court finds that Plaintiff's allegation that the ALJ "failed to consider" Dr. Rodríguez-Nieves findings lacks merit. Rather, the ALJ merely weighed all the appropriate evidence, sifted through the conflicts and reached a conclusion. Again, it is important to remember that, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them. Lizotte, 654 F.2d 127 (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts).[6]

Additionally, the agency consulting physicians concluded that, although Plaintiff suffered from several ailments, they were not disabling enough to preclude all work, thus providing further support for the ALJ's conclusions. Dr. José Casiano ("Dr. Casiano")

---

[6] The Court gives short shrift to Plaintiff's bare bones allegation that the record lacked an RFC assessment, and thus, the ALJ improperly evaluated raw medical data. That was not the case here, insofar as both Dr. Rodríguez and Dr. Rodríguez-Nieves clearly concluded their reports with specific assessments of Plaintiff's RFC.

reviewed Plaintiff's medical history in May 2013 shortly after Plaintiff was examined by Dr. Rodríguez. Dr. Casiano likewise found that Plaintiff's condition resulted in no more than moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. p. 211). Accordingly, Dr. Casiano concluded that Plaintiff could remember, understand, and carry out simple instructions; follow simple work procedures and make simple work-related decisions; and maintain the ability to sustain attention for up to two hours. (Tr. p. 212). Dr. Jeanette Maldonado reviewed Plaintiff's file in March 2014, found no evidence of worsening of Plaintiff's condition and concurred with Dr. Casiano's conclusions. (Tr. p. 228).

As is well known, state agency consultants are highly qualified medical personnel who are experts in the evaluation of the medical issues involved in disability claims and whose conclusions are to be afforded great weight if they are supported by other evidence in the record. See Coggon v. Barnhart, 354 F. Supp. 2d 40, 54 (D. Mass. 2005); 20 C.F.R. §404.1527(e)(2) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). In the case at bar, the state agency consultants' conclusions buttress the conclusions of examining physicians Dr. Rodríguez and Dr. Rodríguez-Nieves. Therefore, the Court finds that the ALJ had ample evidence from which to conclude that Plaintiff could do light work.

Finally, as stated by the Commissioner, the record reflects spotty and infrequent mental health treatment. The appointments occurred approximately every three (3) months for medication management and Plaintiff's GAF score was always between 60 and 70, reflecting only moderate symptoms. (Tr. pp. 92 (GAF 70), 154 (GAF 70), 159 (GAF 60), 171 (GAF 60), 175 (GAF 75), 387 (GAF 70), 530 (GAF 70), 535 (GAF 60), 548 (GAF 60), 552 (GAF 70)). In short, Plaintiff's treatment records failed to evidence a totally disabling condition.

Regarding the evaluation performed by psychiatrist Melvin Velázquez Muñoz, the Court did not consider it because it occurred in July 2016. That is to say, it was performed almost two (2) years after the last insured date of December 31, 2014. While courts have reached different conclusions as to whether and how much post coverage medical evidence should weigh in determining whether a condition was disabling during the coverage period, the First Circuit has held that "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question [of] whether the claimant's impairment reached disabling severity before his insurance status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552 (1st Cir. 1993) (unpublished); (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982).; see also Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 754 (E.D.Mich. 2003) ("Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status."). In order for the evidence to be useful, however, it

ought to be " 'reasonably proximate' " to the date last insured. Cooper, 277 F.Supp.2d at 754 (*quoting* Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir. 1976)).

In the instant case, an evaluation performed almost two (2) years after the last insured date is simply too removed and not relevant to the determination of whether Plaintiff was disabled on or before December 2014.

Taken together, the record provides ample support for the ALJ's conclusion that Plaintiff was not completely disabled as alleged and that, although he suffered from other conditions, these were not considered severe and did not prevent him from performing at least light work. In view of the above, the Court finds no error with the Commissioner's conclusion that Plaintiff was not disabled from the alleged onset date of December 9, 2011, though the last date insured of December 31, 2014, and finds such a conclusion is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds there is substantial evidence on the record in support of the Commissioner's decision that Plaintiff was not disabled. Therefore, the Commissioner's decision is AFFIRMED.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 22nd day of April 2020.

           S/CAMILLE L. VELEZ-RIVE
           CAMILLE L. VELEZ RIVE
           UNITED STATES MAGISTRATE JUDGE